(115 App. Div. 323)

GOLDSTROM v. INTERBOROUGH RAPID TRANSIT CO. et al.

(Supreme Court, Appellate Division, First Department.   November 5, 1906.)

1. EASEMENTS—ACQUISITION BY PRESCRIPTION.

An elevated railroad may acquire by prescription the easements of abutting owners.

[Ed. Note.—For cases in point, see vol. 17, Cent. Dig. Easements, § 84.]

2. LIMITATION OF ACTIONS—COMMENCEMENT OF ACTION—EFFECT—PERSONS NOT PARTIES.

An action by a tenant of an abutting owner against an elevated railroad for injuries to easements, brought within 20 years after the commencement of the operation of the railroad, does not interrupt the running of limitations against the owner, and he cannot after the expiration of more than 20 years from the commencement of the operation of the railroad maintain an action for injury to easements.

[Ed. Note.—For cases in point, see vol. 33, Cent. Dig. Limitation of Actions, §§ 548–550.]

Appeal from Special Term, New York County.

Action by Katie Goldstrom against the Interborough Rapid Transit Company and another.   From a judgment for plaintiff, defendants appeal.   Reversed, and new trial ordered.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

Julien T. Davies and Theodore L. Waugh, for appellants.
Edwin M. Felt, for respondent.

O'BRIEN, P. J. This action was commenced January 28, 1901, by the plaintiff as owner of the fee against the elevated railroad. By stipulation the Interborough Rapid Transit Company was joined as a party defendant. It was shown that the operation of the railroad and the running of the first train in front of the property occurred on March 1, 1880, so that this action was commenced 20 years after the above entry.

The main question upon this appeal is as to whether the defendants have acquired the right to maintain and operate their railroad by prescription. This question was directly presented in Hindley v. Manhattan Railway Co., 103 App. Div. 504, 93 N. Y. Supp. 53, and in following it the learned judge at Special Term decided in favor of the plaintiff. Subsequently the Hindley Case was appealed, and has been decided by the Court of Appeals reversing this court (185 N. Y. 335, 78 N. E. 276), and finally settling this long mooted question by holding that the elevated railroad may acquire easements of abutting owners by prescription. There is no distinction in principle between the Hindley and the case at bar. We are therefore bound by the decision of the Court of Appeals, unless there are facts in the present case calling for the application of a different rule.

It is insisted that the cases are distinguishable because of a suit brought by a tenant within the 20 years against the railroad company, which as contended, interrupted the running of the statute against the owner of the fee. This necessarily requires a determination of whether or not the tenant can be said legally to have represented the landlord in bringing the action, or, in other words, did the action brought by the tenant inure to the benefit of the landlord. The solution, we think, depends upon the answer to be given as to whether different prescriptions may exist in favor of different persons in respect to the same land, or, differently expressed, are the interests of a landlord and tenant so identified and similar as to have the rights of one affected by the course or conduct of the other? Washburn, in his work on the Law of Easements and Servitudes (4th Ed. p. 165), states what the decisions confirm that:

"Different prescriptions may exist in favor of different persons in respect to the same land. That is, one may have a prescriptive right for one purpose and another may have a like right for another purpose."

Moreover, we find in this elevated railroad litigation a number of cases which hold that the right of action as between the landlord and tenant is separate and distinct, being based upon the separate and distinct estate which each enjoys. Storms v. Man. Ry. Co., 178 N. Y. 493, 71 N. E. 3, 66 L. R. A. 625; Kearney v. Met. El. Ry. Co., 129 N. Y. 76, 29 N. E. 70; Witmark v. N. Y. El. R. R. Co., 149 N. Y. 393, 44 N. E. 78. In Kernochan v. Manhattan Ry. Co., 161 N. Y. 345, 55 N. E. 906, Judge Gray thus clearly expresses the opinion of the Court of Appeals:

"There is no principle of law that limits the number of actions which may be brought against a wrongdoer by those who have suffered from his acts. If the wrong is one committed upon the rights of the lessor of property by an injury done to the reversion, he may have his remedy. If it is one which diminishes the enjoyment by the tenant of the possession of the premises leased, he, also, may have his remedy. As it was said in the Hine's Case, 128 N. Y. 571, 29 N. E. 69: 'In either case it is a matter of proof as to the damage sustained by the particular complainant and neither litigant is the representative of the other in an action of trespass.'"

As correctly urged by the appellant, therefore, to each, separately, is open and available a protection from wrong and a remedy for injury, and each may both actually grant and be presumed to grant a separate right. They are not privies in title for "the term 'privity' denotes mutual or successive relationship to the same right of property." 1 Greenleaf on Evidence (16th Ed.) § 523. And the same author (section 545) thus states the law:

"The claim of a prescriptive right may be defeated by evidence, showing that it has been interrupted within the legal period; but this must be an interruption of the right, and not simply an interruption of the use or possession."

And again he says:

"The acquiescence of the owner, however, may be inferred from circumstances, and, where the time has once begun to run against him, the interposition of a particular estate does not stop it." See, also, Washburn's Law of Easements and Servitudes (4th Ed.) p. 148; Wood on Limitations (4th Ed.) § 270; Freeman on Co-Tenancy and Partition (2d Ed.) § 106.

Without attempting to quote at length from text-writers or the decisions in other jurisdictions, it is sufficient to say that upon the question of what does and does not stop the running of the statute, that as between the landlord and tenant, though the cause of action in favor of the landlord, and that in favor of the tenant may be for the same wrong and for similar relief, an action by the latter cannot be held legally to stop or interrupt the statute when it has once been set running as against the landlord.

It follows that the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.